LAMKIN IP DEFENSE
Rachael D. Lamkin (246066)
655 Montgomery St., 7th Floor
San Francisco, CA 94111
916.747.6091
RDL@LamkinIPDefense.com

*Attorneys for DJ Plaintiff
Nina Shope*

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

| | |
|---|---|
| NINA SHOPE, <br><br> Plaintiff, <br><br> v. <br><br> FRIDA KAHLO CORPORATION, a Panamanian corporation, and FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation, <br><br> Defendant. | Case No. <br><br> **PLAINTIFF'S DECLARATORY JUDGMENT COMPLAINT FOR NON-INFRINGEMENT, CANCELATION, TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE and DECEPTIVE AND UNFAIR TRADE PRACTICES** |

**PLAINTIFF'S DECLARATORY JUDGMENT COMPLAINT NON-INFRINGEMENT, CANCELATION, TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE, and DECEPTIVE AND UNFAIR TRADE PRACTICES**

Plaintiff Nina Shope hereby respectfully files this Complaint seeking to stop the ironically named Frida Kahlo Corporation from asserting alleged rights in the famous Mexican artist Frida Kahlo against a local author and craftswoman, and from chilling the market for authentically representative Frida Kahlo dolls.

///

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement and cancelation arising under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*, and for Colorado state law claims for: (1) tortious interference with prospective business advantage; and (2) deceptive and unfair trade practices. Plaintiff Nina Shope also seeks attorney's fees pursuant to Section 35 of the Lanham Act, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749 (2014), and Colorado's Consumer Protection Act.

## THE PARTIES

2. Declaratory Judgment Plaintiff Nina Shope is a published author and craft-artist living in Denver, Colorado.

3. Declaratory Judgment Defendants the Frida Kahlo Corporation and Kahlo Investments, S.A. ("FKC") are Panamanian Corporations with a principal place of business in Bay Islands, Florida.

## JURISDICTION AND VENUE

4. This Complaint arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* based on FKC's improper serving upon the artist platform Etsy an intellectual property takedown of Ms. Shope's artwork thereby giving rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202.

5. This Court has supplemental jurisdiction over Ms. Shope's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

6. This Court has jurisdiction to determine the right to registration and to order cancelation of a registration pursuant to 15 U.S.C. § 1119.

7. This Court has jurisdiction over FKC. FKC maintains an office in Florida. FKC reached into the United States and Colorado and purposefully harmed a citizen therein. In order to

1  send its improper and fraudulent take-down notice to Etsy, FKC had to view Ms. Shope's Etsy
2  site, which predominately displays her location as Denver Colorado.  FKC claims to be
3  systematically and continuously using its alleged rights in the "Frida Kahlo" trademark in the
4  United States and this judicial district.  FKY repeatedly issues false takedown notices to platforms
5  with sellers and customers across the United States and in this judicial district.  FKC has
6  repeatedly availed itself of the use of courts in the United States.

7      8. Venue is proper in this judicial district because a substantial part of the events
8  giving rise to the claim occurred herein, including the harms and injuries to Ms. Shope and
9  Colorado consumers.

## FACTUAL BACKGROUND

    9. ***Frida Kahlo*** (1907 - 1954) is now regarded as one of the most significant artists of the twentieth century.[1]  By 1984, Frida Kahlo's reputation as an artist had grown to such extent that Mexico declared her works to be National Cultural Heritage, prohibiting their export from the country.[2]  As a result, her paintings seldom appear in international auctions and comprehensive retrospectives are rare.[3]  Regardless, her paintings have still broken records for Latin American art at auction.  In addition to her acknowledged, critically important art, Frida Kahlo is an iconic figure to many communities, including the Latin, communist, feminist, human beings with disabilities, and gay communities world-wide.[4]

    10. Frida Kahlo died intestate in Mexico in 1954.  To the extent that the United States would recognize the publicity rights of Mexico, any publicity rights in the name and image of

---

[1] https://www.tate.org.uk/whats-on/tate-modern/exhibition/frida-kahlo
[2] *Theran, Susan (1999). Leonard's Price Index of Latin American Art at Auction. Auction Index, Inc.* ISBN 978-1-349-15086-1.
[3] https://news.artnet.com/market/frida-kahlo-market-scarcity-284667
[4] *Baddeley, Oriana (2005). "Reflecting on Kahlo: Mirrors, Masquerade and the Politics of Identification". In Dexter, Emma (ed.). Frida Kahlo.* Tate Modern. ISBN 1-85437-586-5.

Frida Kahlo expired fifty (50) years after her death, in 2004.

11. Frida Kahlo has attracted such immense popular interest that the term "Fridamania" has been coined to describe the phenomenon. Material to this case, she is considered one of the most instantly recognizable artists world-wide.[5]

12. Frida Kahlo was known to favor and support the artwork and craft of local artisans and her own artwork often drew upon folk art traditions, as does Ms. Shope's artwork.[6]

13. ***Plaintiff Nina Shope*** is a published author and multimedia artist who creates, among other projects, art honoring and employing the image of Frida Kahlo.

14. Ms. Shope's art includes hand-crafted dolls bearing the image of Frida Kahlo and her life, including this rendering of Frida Kahlo's Broken Column (1944):



---

[5] *Id.*; *see also* Frida Kahlo's well-curated Wikipedia page, attached hereto and incorporated by reference herein.
[6] https://www.sfmoma.org/artist/Frida_Kahlo/

15. **The Frida Kahlo Corporation** (FKC) is a Panamanian Corporation owned by a wealthy man from Venezuela named Carlos Dorado, now believed to be living in Florida after purportedly fleeing Venezuela for alleged money laundering and black-market operations.[7]

16. Dorado learned of Frida Kahlo in 2002, explaining "an employee of mine wore a flannel [shirt] with a very ugly woman, with eyebrows joined."[8] Dorado asked the employee who the "ugly woman" was, and his employee explained that it was the face of Frida Kahlo, the Mexican painter. The employee informed Dorado about the Frida biopic staring Selma Hayek then-playing, and Dorado and his wife went to see the movie that evening. Dorado claims the film made a huge impression upon him, and on his next trip to Mexico, he went to Frida's "Blue House" in Coyoacan, Mexico. At the Blue House, Dorado claims to have met Isolda Kahlo, the daughter of Frida's sister Cristina (Frida Kahlo's niece).

17. Dorado admits that he used his skills "as a used car salesman," to con the family into letting him commercialize Frida Kahlo."[9]

18. But *Frida Kahlo's Family (the "Kahlo Family")* disputes this account. According to the family, any transfer of rights to FKC was not a complete transfer; allegedly FKC and the family were supposed to work together, to mutually approve of any products bearing Frida Kahlo's name and image.

19. According to the Kahlo Family, "We entered into a partnership with [FKC], we never sold them our rights. The agreement with the Corporation was that [the family] would provide the brand name, while [FKC] would provide the resources and the know-how."[10]

---

[7] https://venezuelanalysis.com/news/301
[8] Global Opinions, Frida Kahlo Corporation, by Marina García, Published on January 1, 2017, archived at https://archive.fo/i3yNF
[9] *Id*.
[10] El Universal, Legal battle over Frida Kahlo brand, Archived at http://archive.is/bUtTP

20. In fact, the Kahlo Family recently won an injunction in Mexico, barring the sale of the "Frida Kahlo Barbie" being sold by Mattel in Mexico.[11]

21. The Kahlo Family owns the "Frida Kahlo" twitter account:

https://twitter.com/fridakahlo/

The Kahlo Family owns the "Frida Kahlo" Instagram account:

https://www.instagram.com/fridakahlo/

23. The Kahlo Family owns the "Frida Kahlo" Facebook account

https://www.facebook.com/pg/fridakahlo

24. On or about April 18, 2018, the family published on their Frida Kahlo Facebook page, an open letter to the public claiming, *inter alia*, that a court in Mexico has issued a decree that FKC cannot use the brand, image and work of Frida Kahlo without consent of the family. The letter also goes on to state that FKC is to refrain from, "any act tending to commercialize products that have the brand and image of Frida Kahlo."

25. One of the most contentious issues between FKC and the Kahlo Family is Mattel's Frida Kahlo Barbie:

---

[11] https://www.theguardian.com/artanddesign/2018/apr/20/frida-kahlo-barbie-doll-mexico-injunction?CMP=twt_gu

26. Upon release by Mattel as part of its "Inspiring Women" series, the Kahlo Family was outraged. The Frida Kahlo Barbie looks nothing like Frida Kahlo. She is light-skinned, does not contain Frida Kahlo's iconic mustache or unibrow, and does not contain the prosthetic leg that Frida Kahlo wore since 1953, when her leg was amputated. The release of Mattel's doll prompted the Kahlo Family to seek the above-mentioned injunction.

27. The Kahlo Family currently sells a Frida Kahlo doll and, upon information and belief, has continuously since 2007:

28. ***Etsy*** is an online platform that allows artists to sell their work to the general public

directly. On May 27, 2019, FKC submitted a "notice of intellectual property infringement" to Etsy, forcing an automated takedown procedure to remove several of Ms. Shope's hand-crafted artisanal dolls depicting Frida Kahlo and the Marriage of Frida & Diego:




29. FKC submitted the takedown at-issue even though, at least as early as May 2018, FKC was made aware that the use of Frida Kahlo to identify dolls depicting the historical figure Frida Kahlo is not infringing use.

30. Unlike in a court of law, when platforms such as Etsy receive a takedown notice, almost universally, often automatically, the sellers work is deactivated, leaving no recourse other than lawsuits such as this. That is, unlike in a court of law, the platform's procedures result in an automatic injunction regardless of the merits of the underlying claim.

## COUNT I:

## NON-INFRINGEMENT

31. Paragraphs 1-30 are incorporated by reference herein.

32. FKC currently purports to hold an assignment to US trademark registration no. 3326314 covering dolls (the '314 registration").

33. The issuance of the '314 registration is *contra* well-established law and the

1   USPTO's own precedent. *See, e.g., In re Carlson Dolls Co.*, 31 U.S.P.Q. 2d 1319, at *2 (T.T.A.B.
2   1994) (finding that the name "Martha Washington" is descriptive of a doll intended to represent
3   the historical figure Martha Washington); *In re Amelia Earhart*, Serial No. 87943278 (denying
4   Amelia Earhart mark for dolls, and finding "Specifically, in this case, the mark AMELIA
5   EARHART is merely descriptive in that it immediately and aptly conveys that applicant's dolls
6   depict the historical figure Amelia Earhart.")
7
8       34.     In instances such as these, deference is not generally afforded the examiner's
9   decision to register.
10      35.     Further, the Federal Circuit has held that *Chevron* deference does not apply to
11  USPTO determinations.
12      36.     Regardless, the identification of a doll depicting Frida Kahlo as "Frida Kahlo doll"
13  is not an infringement of any purported registration under the trademark laws, and any reasonable
14  trademark practitioner would understand that to be the case.
15
16      37.     Ms. Shope's accurate description of her artwork as representing the historical
17  person, Frida Kahlo, is not source-identifying (does not tell the consumer that the product is
18  associated with FKC), is not passing off, is not any use violative of the Lanham Act.
19      38.     On the contrary, FKC's takedown notice violates the trademark laws.
20
                          **COUNT II:**
21
                     **NOMINATIVE FAIR USE**
22
23      39.     Paragraphs 1-38 are incorporated by reference herein.
24      40.     Dolls depicting Frida Kahlo would not be readily identifiable without use of the
25  descriptor "Frida Kahlo".  It's hard to imagine a use more descriptive than "Frida Kahlo doll" for a
26  doll depicting the historical figure Frida Kahlo.
27
        41.     Ms. Shope used only so much of the mark as was reasonably necessary to identify
28

her dolls.

42. Ms. Shope did nothing that would suggest sponsorship or endorsement by FKC.

43. Ms. Shope's dolls and art depicting Frida Kahlo cannot infringe FKC's purported "Frida Kahlo" under the nominative fair use doctrine.

## COUNT III:

## NON-INFRINGEMENT OF AN ARTISTIC WORK

44. Paragraphs 1-43 are incorporated by reference herein.

45. The First Amendment protects expressive and artistic works from trademark infringement allegations.

46. The Lanham Act is construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression.

47. Consumers expect a title of a book or the name of a doll to communicate a message about the book or doll, but they do not expect it to identify the publisher or manufacturer.

48. The name of a doll does not violate the Lanham Act unless the name has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work. Here, neither concern applies.

49. Clearly the name "Frida Kahlo" has artistic relevance to the artistic work comprising the doll depicting Frida Kahlo.

50. And the name "Frida Kahlo" does not explicitly mislead as to the source; instead it simply and accurately identifies the historical figure depicted by the doll.

51. That the First Amendment to the United States Constitution protects Ms. Shope's artistic expression is rendered plain by the subject matter of the trademark and accused works at-issue: dolls.

52. According to social scientists, "[d]olls are more than just the playthings of

children—they are pieces of material culture that embody and convey social beliefs and values. . . . [A] key debate among those who study dolls is the extent to which they directly shape the lives of children. Some scholars argue that dolls play a direct role in the socialization of children."[12]

53. It was the use of white dolls by black children that swayed the jury in *Brown v. Board of Education*.[13]

54. Frida Kahlo was in a near-fatal accident when she was eighteen, wherein an iron handrail impaled her through her pelvis. Frida Kahlo was forced to live in corsets, both steel and caste, for the remainder of her life. Kahlo's The Broken Column depicts her lifelong struggle with pain after that accident:



55. Ms. Shope's decision to depict Kahlo's Broken Column in doll form adds an

---

[12] *See* https://www.oxfordbibliographies.com/view/document/obo-9780199791231/obo-9780199791231-0155.xml (collecting studies)
[13] https://www.naacpldf.org/ldf-celebrates-60th-anniversary-brown-v-board-education/significance-doll-test/

important expression to the doll canon as it allows children without major injuries to build empathy and those with major injuries to see their lives represented in ways not normally seen.[14]

56. The First Amendment protects Ms. Shope's expressive and artistic works.

## COUNT IV:

## CANCELATION DUE TO GENERICNESS (15 U.S.C. § 1064(3))

57. Paragraphs 1-56 are incorporated by reference herein.

58. As identified in the goods' description for the registration at-issue, the genus of the goods is Frida Kahlo dolls.

59. The relevant public understands that the genus Frida Kahlo dolls primarily refers to Frida Kahlo dolls.

60. For example, the identifiers and search terms "Frida Kahlo doll" are employed by sellers on Etsy because consumers search for Frida Kahlo dolls by using that exact search phrase.

61. The name Frida Kahlo for dolls is generic because it is the name of the exclusive subject, Frida Kahlo dolls.

62. There most appropriate way for a potential consumer of Frida Kahlo dolls to search for said product is to search for "Frida Kahlo dolls".

63. The '314 registration should be canceled as generic.

## COUNT V:

## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

64. Paragraphs 1-63 are incorporated by reference herein.

65. FKC knew and intended that its allegations of trademark infringement would result in Ms. Shope's artwork being removed from the Etsy platform.

---

[14] Ms. Shope's Broken Column Frida Kahlo doll is not currently displayed on Etsy for fear that it will be taken down and cause Ms. Shope to receive a permanent ban from Etsy.

66. FKC has known that the complained of use is not infringing since, at least, April 2018.

67. Even though FKC knows that Frida Kahlo dolls do not infringe the '314 registration, FKC continues to submit takedown notices to Etsy.

68. These takedown notices are thus intentional and improper interference with prospective business advantage causing economic damage in the form of lost sales for the deactivated products.

## COUNT VI:

## DECEPTIVE AND UNFAIR TRADE PRACTICES: COLORADO CONSUMER PROTECTION ACT (C.R.S. § 6-1-105)

69. Paragraphs 1-68 are incorporated by reference herein.

70. FKC has engaged in a deceptive or unfair trade practice.

71. Specifically, FKC submitted a false trademark takedown to Etsy claiming that Ms. Shope's non-infringing use was in fact infringing.

72. Further, FKC's improper takedown was done with a European registration, which is not enforceable in the United States.

73. The deceptive or unfair trade practice (the improper takedown) occurred in the course of FKC's business, vocation, or occupation. Specifically, FKC repeatedly sends similar false takedown's to Etsy and other such platforms.

74. The deceptive or unfair trade practice significantly impacts the public as actual or potential consumers. Specifically, FKC's improper takedown notices impact the platforms, the artists, and consumers seeking dolls that are artistic, meaningfully expressive, diverse, and representative of Frida Kahlo and any traits shared with the iconic artist.

75. The consuming public desires dolls representative of their own appearance, traits,

and values. Especially with hugely popular and iconic figures such as Frida Kahlo, as a simple search for "Frida Kahlo Barbie" on social media reveals. *See, e.g.:*







76. Repeatedly the consuming public has made clear that they would like to be able to purchase Frida Kahlo dolls that resemble Latina women and human beings with disabilities. (*See, e.g., supra*, from Professor Black: "I imagine being handed a disabled Barbie as a child, one with a

removable leg, a shapeshifting body, a complicated body. Would it have saved me from decades of self-loathing and body hatred?")

77. FKC's actions significantly chill the market for Frida Kahlo dolls, including dolls that more accurately represent Frida Kahlo and the consuming public, including dolls that represent the Latina, gay, and persons-with-disabilities communities.

78. Ms. Shope suffered an injury in fact, including actual lost revenue for the deactivated dolls.

79. FKC's assertion of its registrations against knowing non-infringers is an attempt to harm competitors and block any competing Frida Kahlo dolls, and not actually based on a good-faith belief in infringement.

80. FKC's improper actions harm Colorado consumers, and have harmed and continue to harm Ms. Shope.

## JURY TRIAL DEMAND

Ms. Shope requests a trial by a jury of her peers.

## PRAYER FOR RELIEF

81. Ms. Shope seeks an Order(s):
   i. finding that Ms. Shope's dolls do not infringe the registration at-issue;
   ii. mandating that FKC provide to Etsy a rescission of its takedown notice;
   iii. enjoining FKC from enforcing the registration at-issue against any maker of Frida Kahlo dolls;
   iv. cancelling the registration at-issue;
   v. mandating damages for all financial harms suffered by Ms. Shope, including loss of revenue; and
   vi. awarding Ms. Shope her attorney's fees and costs.

///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

*Rachael D. Lamkin*
Rachael D. Lamkin

*Attorneys for DJ Plaintiff Nina Shope*